

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00107-CV

_____

JAMES MILLER, Appellant

V.

HEATHER SCHUPP, Appellee

On Appeal from the 431st District Court
Denton County, Texas
Trial Court No. 20-8768-158

Before Kerr, Birdwell, and Bassel, JJ.
Memorandum Opinion by Justice Kerr

# MEMORANDUM OPINION

## I.  Introduction

Appellant James Miller challenges the trial court's order granting Appellee Heather Schupp's Texas Citizen Participation Act motion and dismissing his defamation suit against Schupp, who is his ex-wife.

Miller sued Schupp for defamation after she made allegedly defamatory statements about him to his sister and to a friend. Miller claims that in September or October 2020, Schupp contacted Miller's sister and told her that Miller had confided in her that his mother had sexually molested him when he was a child. Miller further alleges that Schupp told his sister in the same call that (1) he was addicted to crack, (2) he was fired from his job after he was charged with a crime, and (3) he had beaten her. Miller also claims that in July 2020, Schupp sent his friend Asher Creppel an Instagram message stating that (1) Miller had physically abused her, his sisters, and many women in in his life; (2) the "police were called on many occasions" as a result of Miller's physical violence; and (3) as a result of Miller's acts of physical violence, the Austin police department had "[s]everal hundred pages . . . on [Miller] alone."

Schupp filed a TCPA motion to dismiss Miller's suit claiming that she had merely exercised her free-speech rights. Miller filed a response with attached evidence that he argued established a prima facie case for each essential element of his defamation claim. The trial court found that Miller did not meet his burden to establish a prima facie showing that his claim was meritorious; thus, the trial court

granted Schupp's motion, dismissed Miller's suit, and awarded Schupp $26,624.93 in trial-court attorney's fees, $5,000 in sanctions, and $25,000 in conditional appellate fees.

Because we conclude that the trial court's ruling was erroneous, we reverse the trial court's order dismissing Miller's suit and awarding attorney's fees and sanctions. We remand this matter to the trial court for further proceedings consistent with this opinion.

## II. Law

Texas Civil Practice & Remedies Code Chapter 27, also known as the Texas Citizens Participation Act, is an anti-SLAPP statute.[1] *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001-.011. The TCPA's purpose is "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code Ann. § 27.002. Put another way, its purpose is to protect citizens who petition or speak on matters of public concern from retaliating lawsuits that seek to intimidate or silence them. *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding).

---

[1]"SLAPP" is an acronym for "Strategic Lawsuits Against Public Participation." *See In re Lipsky*, 411 S.W.3d 530, 536 n.1 (Tex. App.—Fort Worth 2013, orig. proceeding).

The TCPA uses a three-step process to resolve whether a claim is subject to its strictures and, if so, whether the claim should be dismissed or allowed to proceed because it appears to have merit. The three steps are as follows: (1) the party invoking the TCPA and seeking dismissal must demonstrate that a "legal action" has been brought against it that is "based on or is in response to" an exercise of protected free-speech rights, petition rights, or association rights; (2) if the moving party satisfies step one, the trial court nevertheless "may not dismiss a legal action . . . if the party bringing [the suit] establishes by clear and specific evidence a prima facie case for each essential element of the claim in question[;]" and (3) if the nonmoving party carries its step-two burden, the case may still be dismissed "if the moving party establishes an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law." Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b)–(d).

When reviewing a TCPA ruling, we view the pleadings and the evidence in the light most favorable to the nonmovant. *Maggret v. Ramsey's Rods & Restoration*, No. 02-20-00395-CV, 2021 WL 2253244 at *2 (Tex. App.—Fort Worth June 3, 2021, no pet.) (mem. op.); *Stallion Oilfield Servs., Ltd. v. Gravity Oilfield Servs., LLC*, 592 S.W.3d 205, 213–14 (Tex. App.—Eastland 2019, pets. denied). We review de novo a trial court's ruling on a motion to dismiss, including whether each party has met its respective burden. *United Food & Com. Workers Int'l Union v. Wal–Mart Stores, Inc.*, 430 S.W.3d 508, 511 (Tex. App.—Fort Worth 2014, no pet.).

## III. Analysis

### A. Free-Speech Rights[2]

The first question in our TCPA analysis is whether Miller's lawsuit is "based on[, relates to,] or is in response" to Schupp's free-speech rights. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b).

An "[e]xercise of the right of free speech" is defined as "a communication made in connection with a matter of public concern." *Id.* § 27.001(3). "Communication" includes "the making or submitting of a statement or document in any form or medium, including . . . electronic." *Id.* § 27.001(1). Public-concern matters include statements regarding the commission of a crime. *Brady v. Klentzman*, 515 S.W.3d 878, 884 (Tex. 2017); *MediaOne, L.L.C. v. Henderson*, 592 S.W.3d 933, 940 (Tex. App.—Tyler 2019, pet. denied) (holding that publication reporting criminal activity was a public-concern matter).

Schupp's Instagram message to Creppel is a communication. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001(1); *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (stating that the TCPA applies to both public and private communications). And Schupp's message that Miller physically abused her and other women is a claim

---

[2]Schupp does not argue that Miller's claims implicate her right to petition or her right of association.

that Miller committed numerous assaults[3] and is thus a statement regarding a public-concern matter. *See* Tex. Penal Code Ann. § 22.01(a)(1) ("A person commits an offense if the person . . . intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse"); *Brady*, 515 S.W.3d at 884; *MediaOne, L.L.C.*, 592 S.W.3d at 940. Because Schupp's message was made in connection with a public-concern matter, it constituted an "exercise of [her] right of free speech," as that term is defined in the statute. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001(3).

## B. Clear and Specific Evidence

Because Schupp demonstrated that Miller's lawsuit implicated her free-speech rights, to prevent the lawsuit's dismissal the burden shifted to Miller to prove, by clear and specific evidence, a prima facie case for each essential element of his claim against her. *See id.* § 27.005(b) (requiring the court to dismiss the action if the movant shows that the action relates to the exercise of the right of free speech), (c) (providing that the court may not dismiss the action if the opponent "establishes by clear and specific evidence a prima facie case for each essential element of the claim in question"). The TCPA's undefined terms "clear" and "specific" have been interpreted according to their plain meanings. "Clear" has been defined as "unambiguous," "sure," or "free from doubt." *Lipsky*, 460 S.W.3d at 590. "Specific" has been defined as "explicit" or

---

[3]These alleged offenses may also qualify as family-violence acts. *See* Tex. Fam. Code Ann. § 71.004(1) (stating that family violence is an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault).

6

"relating to a particular named thing." *Id.* "Prima facie case" refers to the "minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *Id.*

To prevail on his defamation action, Miller must prove (1) the publication of a false fact statement to a third party, (2) that defamed him, (3) made with the requisite degree of fault, and (4) damages. *Id.* at 593. Pleadings and evidence that establish the facts of when, where, and what was said, the defamatory nature of the statements, and how they damaged the plaintiff are sufficient to defeat a TCPA motion to dismiss. *Id.* at 591. To carry his burden, Miller need tender only the minimum amount of evidence to support a rational inference of each defamation-claim element. *Id.* at 591.

Miller argues that Schupp's statements constitute defamation per se because they are the type of statements that injure his reputation and subject him to public hatred, contempt, ridicule, or financial injury.[4] To prove a defamation-per-se claim, Miller must prove only the first three defamation elements, as he would be entitled to recover general damages without proof of any specific loss. *Innovative Block of S. Tex., Ltd. v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 418 (Tex. 2020) (holding when defamation is per se, the communication is actionable in and of itself without actual-

---

[4]During the hearing on Schupp's motion to dismiss, Schupp acknowledged that Miller's petition includes a claim of defamation per se.

damages proof); *Lipsky*, 460 S.W.3d at 593. Defamation-per-se statements are deemed

so obviously harmful that damages are presumed.[5] *Id.*

Miller alleges that falsely accusing someone of physically abusing "many

women" constitutes defamation per se. We agree. *See id.* at 596 (stating that accusing

---

[5]Miller claims that even though he is not required to, he has provided sufficient proof of damages. Miller states,

> Starting in September 2020, I have been prescribed and began having to take anti-depression medication, medication to help with sleep, medication to help concentrate, and medication to treat my cramps and other stomach-related issues. Prior to my learning of Defendant Schupp's false statements, I had never experienced any of these issues or have had to take any of the medications I must now take.
>
> . . .
>
> After I learned of Defendant Schupp's false statements in August 2020 (as set out in this lawsuit), I was no longer able to regularly sleep, have been unable to concentrate, have suffered significant weight gain, have felt despondent and depressed and have suffered a loss of self-worth, began experiencing severe anxiety, and began suffering severe stomach cramps.
>
> . . .
>
> As a result of these issues, I have been unable to perform at work at the level I am normally accustomed to. I have lost sales—and the commissions that come with those sales—as a result of my experiencing the issues set out above. I have been passed over for promotion at work because of my experiencing these same issues and because of the false statements made by Defendant Schupp and conveyed to my supervisor David Treadway. [Miller's boss]

We need not decide whether Miller provided sufficient evidence of damages because of our holding that Schupp's statements constitute defamation per se. *See Innovative Block*, 603 S.W.3d at 418.

someone of a crime is an example of defamation per se); *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 374 (Tex. 1984) (op. on reh'g) (explaining that a false statement charging someone with committing a crime is defamatory per se). Because defamation per se meets the second and fourth elements, *see Innovative Block*, 603 S.W.3d at 418, to determine, then, whether Miller's defamation action survived Schupp's TCPA motion to dismiss, we look only for clear and specific evidence of the first and third elements.

### 1.    False-statement publication evidence

In his petition and affidavit, Miller claims that in September or October 2020, Schupp contacted Miller's sister and told her that Miller had confided in Schupp that his mother had sexually molested him when he was a child. Miller further states that Schupp told his sister that he was addicted to crack, he had been fired from his job after being charged with a crime, and he had beaten her. Miller also claims that in July 2020, Schupp sent Creppel the Instagram message that we detailed above. Miller claims that all Schupp's statements are false—"both in their particular details and in the main point, essence[,] or gist in the context in which they were made."

Schupp does not dispute the publication of her statement to Creppel. The evidence Miller offered—that (1) he had never physically assaulted Schupp, his sisters, or "many women," (2) he never told Schupp that his mother had sexually abused him, (3) his employment had never been terminated because he was charged with committing a crime, and (4) he had never abused or been addicted to drugs—was

9

clear and specific evidence of the statements' false nature. *See Lipsky*, 460 S.W.3d at 590.

Schupp's claim that Miller had physically abused her implies at the very least that Miller had personal knowledge regarding the alleged assaults. Assuming no witness was present, Miller was thus in a position to refute the claim but could hardly offer more than his denial. This situation is similar to the one we faced in *Van Der Linden v. Khan*, a case in which the defendant allegedly said that the plaintiff had told her that he had given money to a terrorist organization, and the plaintiff denied that he had made the statement. 535 S.W.3d 179, 198 (Tex. App.—Fort Worth 2017, pet. denied). We noted that where there were only two parties to the communication, the plaintiff could do no more than deny having made the statement. *Id.* Here, as in *Van Der Linden*, the clash between Schupp's statement that Miller physically abused her and Miller's denial that he did so is some evidence that Schupp spoke falsely. *See id.*; *see also Miller v. Watkins*, No. 02-20-00165-CV, 2021 WL 924843, at *11 (Tex. App.—Fort Worth Mar. 11, 2021, no pet.) (mem. op.) (holding that the clash between a statement that an action occurred and the denial that it did is evidence that the person making the statement spoke falsely).

And as for Schupp's statement that Miller had physically abused "many women in his life" before her, Miller's only option, beyond obtaining affidavits denying abuse from every woman he has known, was to deny that he had. Again, Miller would have personal knowledge.

10

Schupp argues that Miller did not dispute every statement in her message to Creppel and thus failed to offer clear and specific evidence of the message's falsity. Specifically, Schupp points to her statements in the message to Creppel that (1) the police had assisted her after Miller physically abused her and (2) the police had amassed hundreds of pages of records related to Miller's abuse of her and other women. Schupp claims that because Miller did not deny these statements, Miller failed to offer clear and specific evidence of the message's false nature. As we recently explained, however, we are not required to determine that each and every statement that a defendant made is defamatory to conclude that a plaintiff carried his burden to establish a viable defamation claim. *See Miller*, 2021 WL 924843, at *9. Instead, the inquiry is whether Miller presented sufficient proof to establish the claim's viability, a task that requires only that we determine whether any of Schupp's statements were defamatory. *Id.* As we explained,

> While the TCPA requires that each legal claim be analyzed individually, the TCPA does not require that each factual basis or theory of recovery underpinning a cause of action must be analyzed separately. Tex. Civ. Prac. & Rem. Code § 27.005(c). Here, Appellees have a single defamation cause of action, which is based upon statements made by [Appellant] in a flyer he publicly distributed and a sign he publicly displayed. If Appellees are successful in presenting prima facie proof in support of their defamation claim as to any of the statements in the flyer or sign, then Appellees will have met their burden under the second step. *See . . . Bui*[ *v. Dangelas*, No. 01-18-01146-CV], 2019 WL 5151410, at *5 [(Tex. App.—Houston [1st Dist.] Oct. 15, 2019, pet. denied) (mem. op.)]; *see generally Landry's, Inc.*[ *v. Animal Legal Def. Fund*], 566 S.W.3d [41,] 53–57 [(Tex. App.—Houston [14th Dist.] 2018, pet. granted)]. The TCPA does not require that Appellees produce evidence that each and every statement in [Appellant's] flyer is defamatory to meet their burden

under the TCPA[ ] or to prove their cause of action at a trial on the merits. Rather, Appellees must establish "a prima facie case for each essential element" of their defamation claim against [Appellant]. Tex. Civ. Prac. & Rem. Code § 27.005(c).

*Id.* (citing *Stone v. Melillo*, No. 14-18-00971-CV, 2020 WL 6143126, at *6 (Tex. App.—Houston [14th Dist.] Oct. 20, 2020, no pet.) (mem. op.)).

Miller has satisfied his burden of providing clear and specific evidence that Schupp published a false statement to a third party. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c).

## 2.    Negligence evidence

As to the third element, whether the publications were made with the requisite degree of fault, Miller's status determines the fault degree applied. *See Lipsky*, 460 S.W.3d at 593. Because Miller was a private individual when Schupp made the statements, rather than a public figure or official, Miler need prove only that Schupp acted with negligence. *See WFAA–TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998) (explaining that a private plaintiff must prove only that the defendant "was at least negligent," whereas a public official or public figure must establish actual malice).

In his pleadings and affidavit, Miller asserts that Schupp acted negligently because she made the complained-of statements knowing they were false or without regard to the statements' false nature. *See D Mag. Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 440 (Tex. 2017) (holding that a person acts with negligence if she knew or should have known that the defamatory statement was false).

Schupp, on the other hand, argues that Miller failed to offer clear and specific proof that she "knew or should have known that the statements regarding her physical abuse . . . were false." Schupp further argues that allowing the same evidence to prove falsity to also prove the requisite fault degree is "circular" and "does not satisfy the clear or specific requirement or establish a prima facie case." We disagree.

According to Schupp, Miller physically abused her on many occasions. But either Miller physically abused Schupp on many occasions or he did not. Only Schupp and Miller know the truth. Because Schupp knows the truth, if Miller did *not* physically abuse her on many occasions, her assertion to the contrary was not only false but also was made with knowledge of its falsity. In other words, if it was false, Schupp knew it was false; if it was true, Schupp knew that it was true. And, under these narrow facts, any evidence that proves that Schupp's assertion was false would also logically and necessarily prove that Schupp knew that her assertion was false.

By holding under the circumstances unique to this case that the same evidence that proves falsity also proves the requisite liability standard, we do not dispense with the fault element. We merely acknowledge that if the facts conclusively prove that the publisher of a defamatory statement had personal knowledge of whether the statement was true or false, proving the statement false also suffices to prove that the defamatory publisher acted with knowledge of the statement's falsity when she published it.

Thus, for the same reasons that Miller met his burden under the TCPA to provide by clear and specific evidence a prima facie case for falsity, Miller has also satisfied his burden of providing clear and specific evidence that Schupp acted negligently when she published the complained-of statements. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c).

## IV. Conclusion

Because we hold that Miller met his burden of producing clear and specific evidence of a prima facie case for each essential defamation-per-se element, we reverse the trial court's order dismissing that claim. Further, we reverse the trial court's award of attorney's fees and sanctions. *See id.* § 27.009(a)(1),(2). Finally, we remand this matter to the trial court to allow Schupp the opportunity to attempt to establish an affirmative defense or other ground upon which she might be entitled to judgment as a matter of law (i.e., the third step of the TCPA analysis). *See id.* § 27.005(d).

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered: January 6, 2022